LOTTINGER, Judge.
This is a suit for a real estate broker’s commission resulting from the sale of property which had been listed for sale with the petitioner real estate broker. The defendant is Huey A. Woodward the owner who sold the property to a third party shortly after the termination of the contract. The Lower Court rendered judgment in favor of petitioner in the full amount of his demand and the defendant has appealed.
The record shows that on February 3, 1956 defendant entered into a contract with petitioner under which the petitioner was designated as the exclusive agent to sell a certain tract of land owned by the defendant and situated approximately elev *307 en miles north of Franklinton, in the Parish of Washington, Louisiana. The agent was to sell said property for the sum of $10,000 or for any other price or term hereafter agreed upon, and defendant agreed to pay the agent a commission at the rate of ten (10%) percent of the gross amount of any sale made during the time of the contract, or on the gross amount of any sale made within 180 days after the termination of the contract, with anyone to whom the property had been quoted during the time of the said contract. The contract provided for attorney fees of an additional twenty-five (25%) percent, plus costs in the event it was necessary for petitioner to file suit to enforce the contract. The said contract was for a period of six months commencing on February 3rd, 1956. The following stipulation was included in the contract: “I agree to refer all applicants to you, and not to interfere in sale of said property, during the term of this contract.” The contract was signed by petitioner and defendant.
On September 25th, 1956 the defendant sold the property in question to Gerald H. Dykes for the sum of $7,000, of which the sum of $4,000 was paid in cash and the balance of $3,000 was represented by a mortgage. This act was executed after the termination of the real estate agent’s contract, however, it was within the 180 day period after the termination of the said contract.
Petitioner now sues for his ten (10%) percent commission on the sale price, plus twenty-five (25%) percent thereof as attorney fees, claiming that the sale of the property was a direct result of his contacts with the purchaser, to whom the property had been quoted while his contract of agency was in full force and effect. The defendant claims, on the other hand, that the sale of the property was not a result of the contract of agency and that the purchaser of the property had never been contacted by the petitioner.
Mrs. E. F.' Tynes, who testified on behalf of petitioner, and who worked for petitioner during the period of the said contract testified that she spoke to Mr. Dykes during the period of the contract and actually showed him the property on one Sunday afternoon approximately three months after the contract had been signed. Mrs. Tynes further stated that on the day after she showed the property to Mr. Dykes the defendant called upon her at her office and told her that Mr. Dykes was having trouble in financing the property.
Mr. Dykes testified on behalf of the defendant to the effect that the purchase of the property was through no effort of Mrs. Tynes or her employer, the petitioner herein. However, the Lower Court found and we agree, that Mr. Dykes contradicted himself on several occasions, and finally admitted that he had spoken to Mrs. Tynes about the property in question but that she told him he would not be interested in same. It seems strange that a real estate broker who was interested in selling a tract of land for a client would make such a remark to a prospective purchaser.
The record discloses without any doubt that Mr. Dykes had several contacts with the defendant relative to the purchase of the property while the contract was in full force and effect. It might well be that the reason for the delay in executing the sale was that Mr. Dykes did have trouble in financing his acquisition, which is established by the record.
Even were we to assume that Mrs. Tynes did not personally have any contact with Mr. Dykes during the period of the contract, we feel that the defendant’s action in attempting to negotiate a sale to Mr. Dykes during said period constituted a breach of his contractual agreement. The contract specifically declared that the defendant would refer all applicants to petitioner and would not interfere with the sale of the said property during the term of the said contract. It was incumbent upon the defendant to refer Mr. Dykes to the real estate agent.
*308 We feel, however, that the testimony substantiates Mrs. Tynes statement to the effect that she did speak to Mr. Dykes relative to purchasing the property, and that she did at least on one occasion show the property to him. The only testimony which contradicts that of Mrs. Tynes is that of Mr. Dykes himself, and we must say that his testimony was very contradictory in several respects.
Be that as it may, in Doll v. Thornhill, 6 So.2d 793, 795, the Orleans Court of Appeal stated as follows:
“But above and beyond all of these facts we find that Thornhill clearly violated the plain provisions of his contract in not referring Bankston to Doll as soon as the former evidenced any interest in the property. It will not do for him to say that had he done so, no sale would have resulted. A real estate agent is supposedly an expert in his business, and we must presume that he could have accomplished what Thornhill accomplished, or that he could have persuaded one of the parties to recede sufficiently from his position for the consummation of a trade. At any rate, he was entitled to the opportunity to try. To uphold the contention made here by Thorn-hill would establish a dangerous rule and would open the door in many cases to the perpetration of fraud upon agents who conscientiously try to carry out their mandates.”
In the Doll case the court cited Alex F. Dreyfus Co. v. Friedman, 171 La. 90, 129 So. 679, wherein the Supreme Court held that the owner of property is obligated to refer all applicants of the property to the agent, when the contract specifically required that he do so. The said case made a distinction between the duty of an owner when his contract includes such a stipulation, and when the contract does not include such a stipulation. The court held that the cases of Clesi v. Cooney, 164 La. 657, 114 So. 584 and O’Neal v. Southland Lumber Co., Inc., 168 La. 235, 121 So. 755, differed from the Friedman case in that the contracts in the Clesi and O’Neal cases did not bear such a stipulation, and that therefore, under the doctrine of the Friedman case and the Doll case, the defendants had a duty to refer any prospective purchaser to his real estate agent, and his failure to do so would result in his liability for the real estate brokers commission if the sale was consummated during the term as provided in the contract.
However, the Lower Court held that said real estate broker in this case actually contacted the purchaser relative to the purchase of the property, and it appears to us that the contact by the real estate broker did actually lead up to the sale of the property. We do not feel that the Lower Court made any error whatsoever in its decision, and the judgment will be affirmed.
For the reasons assigned, the judgment of the Lower Court will be affirmed,. all costs to be paid by the defendant.
Judgment affirmed.